We'll move to the next case. Patricia Harris versus R.J. Reynolds and Philip Morris. Jeffrey Michael is here for the appellants. Andrew Kaufman is here for the appellee, Harris. And Mr. Michael, are you ready to proceed?  You may. May it please the court, Jeffrey Michael arguing on behalf of appellants Philip Morris, USA, and R.J. Reynolds. This appeal raises a discrete issue of Florida law that this court reviews de novo. In order to be a member of the Engle class, did a smoker need to meet the class definition as of the class cutoff date of November 21, 1996? The answer to that question is yes, which means that Mr. Harris was not a class member and this court should reverse. In Engle, the Florida Supreme Court held that the class consists of all Florida residents fitting the class description as of the trial court's order dated November 21, 1996. The class description, according to the Florida Supreme Court, was Florida citizens and residents and their survivors who suffered, presently suffered, or who have died from diseases and medical conditions caused by their addiction to smoking cigarettes. This is Judge Newsom. Maybe just to kind of cut to the chase. I mean, I think as a matter of logic, you're exactly right. You've got two different conditions here, one of which is caused by cigarettes but doesn't meet the cutoff date, one of which was not caused by cigarettes but does meet the cutoff date. And so you've got this kind of fatal mismatch. And just sort of as a matter of logic, this person is not a class member. So what's the best explanation for how the Florida Supreme Court handled Delavecchia? I mean, it seems to me that's the rub for you. The rub for the other side is sort of the logical sort of box that I just put out there. But the rub for you is Delavecchia. What's the best explanation for how the Florida Supreme Court handled her? Right. So I have two explanations for Ms. Delavecchia. The first one is sort of a factual explanation concerning her case and the class members, which is the Florida Supreme Court did not consider addiction causation with respect to Ms. Delavecchia or any class member because that issue was not at issue as to the class members in the original Engle case. There was no addiction causation finding either way for any of the class representatives. The only issue they're dealing with there was manifestation. So there certainly wasn't what you have here, which is an affirmative finding by the jury that the only disease that manifested prior to the class cutoff was not caused by an addiction. The second is more of a precedential viewpoint that you don't read into the treatment of Ms. Delavecchia and extrapolate from their silence regarding addiction causation as to Ms. Delavecchia and use that to undermine the clear and express holdings of the Florida Supreme Court regarding class membership. As a general matter, a smoker was either a class member or not as of November 21st, 1996. Counsel, this is Judge Anderson. I think there's a better answer to Judge Newsom's question than you just gave him. I think that the Florida Supreme Court expressly indicated that they thought that Delavecchia's COPD and hypertension, which were the two timely manifesting diseases. I think the Florida Supreme Court at 1255 in the right column toward the bottom expressly indicates that those were, quote, tobacco related. It's talking about those two and it says Delavecchia's medical records indicate that she had been suffering from a tobacco related disease prior to the time of certification. This, I think, is consistent with what you said in footnote 2 on page 1256. The Supreme Court of Florida expressly notes that the defendants have not challenged that all of these people, including Delavecchia, were members of the class. Just Judge Newsom piggybacking for what it's worth, I thought that's basically what you were going to say in response to my question. I do think that that is a fair reading of the Florida Supreme Court's decision at that point. They were using those terms synonymously. Again, irrespective of why or what happened amidst Delavecchia, the court was very clear in its holding that November 21, 1996, was a class cutoff. Something that happens in 1998-99 can't turn a non-class member all of a sudden retroactively into a class member. I guess, too, let me ask you this. Is it also possible that the point of determining class membership is to decide who in these subsequent, what we'll call them phase 3 proceedings, get preclusive effect of phase 1 findings? Maybe Delavecchia doesn't require that preclusion because she was there. She was there at the inception. She doesn't need preclusive effect. That's a good point, Your Honor. I do agree with that as well. One case I did want to point out from our briefing in terms of future claims being brought by Engle progeny plaintiffs is the Damianakis case, which is cited in the answer brief at 18. That quotes the class notice that was sent out after November 21, 1996, pursuant to that date, that order of that date, that told smokers, you are not a member of the class, and there's no need to exclude yourself, if you are a smoker or former smoker who has not manifested or been diagnosed with any disease or medical condition caused by your addiction to cigarettes. That is what the jury found as to Mr. Harris. As of that date, he had not manifested a disease caused by addiction. I do just want to take a minute to discuss remedy because we believe it's judgment in our favor, whereas plaintiff says, well, we should be able to have a new trial that does not rely on the preclusive effect of the Engle findings. Plaintiff pled one set of causes of action, and Engle is not a cause of action. The causes of action were negligence, strict liability, and two types of fraud claims. Now, at the trial, they said, we can have statute of limitations tolling because of Engle, and we can have our conduct elements fulfilled by preclusion from Engle, and so let us prove that in furtherance of proving those causes of action. We believe that under the jury's verdict, plaintiff failed to prove the causes of action. There's no ability for plaintiff to go back now and get a second trial on those same causes of action. If plaintiff thought she had two different theories or ways to succeed in this trial, it should have been pled in the complaint, raised in the joint pretrial statement, and either tried at that first trial, or beforehand, there should have been a motion under Rule 42 to say, we have two potential ways to win here. We think we should try the Engle claims first, the Engle theory of our causes of action first, and then if we lose on that, depending on how we lose, we would ask the court to have a bifurcated trial of our second theory. That has happened in other Engle cases. That did not happen here, so we think that the proper remedy on remand will be a judgment in our favor. Thank you. The only other point I wanted to make with respect to plaintiff claims here is to just highlight that you also had the 2012 lung cancer, which caused the death. We are not saying that plaintiffs can't prevail on one disease to prove class membership if all of the elements are met as to one disease and then recover damages for that later disease. That happens all the time. What has not happened before is you don't have a single disease that fulfills all criteria, which I think is why plaintiffs never tried to use the 2012 lung cancer to satisfy class membership. I submit there's no difference between that disease and a 1997 or 1998 oral cavity cancer. The same fact pattern for that later disease is recited in the Chacon for a Supreme Court decision, where the verdict form shows that if the two class membership diseases do not fulfill criteria, there's a hard stop in the verdict form. It didn't ask about the later death-producing disease fulfilling class membership. With that, I'll reserve the remainder of my time for rebuttal, if I may. All right. Thank you. We'll hear from Mr. Coffman. Good morning, Judge Wilson, and may it please the Court. My name is Andrew Coffman. I represent the appellee, Mrs. Harris, in this case. Your Honors, this is not an appeal from a class action certified under Federal Rule of Civil Procedure 23 by a federal district court, where, as the Court is well familiar, a class definition must be objectively defined so that a person or the defendant can read the class definition and know who's in the class and who's not. This is a unique creature of Florida law. It is not a class action. The class was decertified by the Anglo Supreme Court. Although it originated as an opt-out class action under Florida law, it morphed into an opt-in. I'm sorry, this is Judge Newsom, but just to get everybody on the same page, you don't deny, do you, that under the definition specified in Florida precedent, you've got to have a single condition that both was caused by cigarette addiction and manifested by November of 1996? We do deny that, Judge Newsom. So if you just read the class definition, Mr. Harris fits it. The class definition is Florida residents who have suffered, suffer, or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine. Mr. Harris meets every word of that class definition. The only question here is whether he made the showing required by the cutoff date. But the cutoff date does not come from the class definition. It comes from the Florida Supreme Court's decision in Engle. The class, as certified, did not have a cutoff date. And as the Florida Supreme Court determined in Chacon, the court, quote, imposed a cutoff date. That was part of the broader principle recognized in Chacon that nothing that happened in the Engle trial court is particularly relevant to the scope of what really was a cause of action created by the Florida Supreme Court in Engle. What Chacon said is this court's Engle decision is the pertinent point of reference for defining the scope of the Engle class because unlike a typical class action, the Engle class was, quote, closed by this court's Engle decision, unquote. So interpreting the cutoff date and determining what must be shown as of a particular date, which I think is really what, Judge Newsom, your question is going to, because the only reason the issue is one disease versus two is that one of our two diseases is after the cutoff date and one is before it. So it's really a cutoff date question. So interpreting that cutoff date doesn't go back to notice or opt out or to the trial court. It goes to Engle and what the Florida Supreme Court has said about Engle. And the Florida Supreme Court has never said that those two requirements must be met by a single disease because of the cutoff date. Now, I want to go to Mr. Michael's answers to the questions raised by you, Judge Newsom, and by Judge Anderson. The Florida courts have consistently determined, and unlike the decisions relied on by Mr. Michael, this is the Florida Supreme Court in Chacon has reaffirmed this, that the best evidence, the often dispositive evidence of the meaning of Engle is Engle's treatment of the class representatives. Now, Mr. Michael had two answers to you, Judge Newsom. One he deemed factual and one presidential. The factual answer was that the question of addiction causation was not an issue with respect to the class reps. That's only sort of true. I think it looks at it through a too narrow of a lens. What was decided in Engle was that Ms. Delavecchia's judgment could stand, even though she had one disease that manifested by the cutoff date, that satisfied the cutoff date invented by the Florida Supreme Court, and she had a different disease for which causation was determined. And causation was determined. Well, what do you say, though, in response to Judge Anderson's, I think, very reasonable reading of Engle, that perhaps the triggering disease, which met both conditions, was COPD? Absolutely. The court called it a tobacco-related disease. I mean, what other point would there have been in calling it a tobacco-related disease, except to put it within the class definition? Sure. I think what Engle meant by that was that the disease was tobacco-related, as found by the Engle jury. And so a prerequisite to bringing an Engle claim, a progeny claim, is that you have to have a disease that was subject to the Engle jury's initial fact-finding. And so if you search the opinion for tobacco-related, you'll see elsewhere it refers to the diseases presented to the Engle jury, most of which the jury found were caused by tobacco. Some they did not. And I think that's the best interpretation. Is that the compelled interpretation? Not necessarily, but that's why you look to the class representatives. I mean, Mr. Michael's argument to you, Judge Anderson, was that you do not read into the treatment of Angie Delavecchia and extrapolate from that the meaning of the opinion. But that's exactly what the Florida courts have said you do do. And that's what Chacon did. Attorney, let me ask you this. Is there also a reasonable, if not compelled, reading of Engle that the Florida Supreme Court actually thought that Delavecchia's lung cancer met both elements? I mean, they go through this extended discussion of the date of manifestation and the date of diagnosis. Again, sort of what's the point of that except the date, the former? I'm not sure I understand the question, Judge Newsom. The basis of the intermediate appellate court's holding, tossing the judgment for Ms. Delavecchia, was that her lung cancer did not meet the cutoff date. So the Florida Supreme Court's answer to that and the basis for the reversal was that a different disease, in fact, did meet the cutoff date. I mean, I think to say that there was, and again, maybe I'm misunderstanding your question, but if the proposition is that the existence of these diseases are themselves evidence of lung cancer, there's just nothing in the opinion to support that. I do want to talk about footnote two, which Judge Anderson... Before you get to that, it seems to me that what the Supreme Court said about Delavecchia was that it doesn't have to be diagnosed by the time of 11-21-96, but there must be symptoms. And truth of the matter, I think the COPD was probably a symptom of the lung cancer, was it not? There's nothing in Engel that says that, Judge Anderson. I'm not going to play doctor and discuss whether COPD accompanies lung cancer. My understanding is there are distinct conditions. But the point is there's nothing in the opinion about that. And the Florida courts, including, again, the Florida Supreme Court and Chacon, have taken what was not said about Delavecchia as probative in addition to what was said. And so, for example, in Chacon, when the argument was that a class member needed to have some awareness of the connection between their symptoms and smoking in order to meet the cutoff date, the Florida Supreme Court said, well, when we discussed the cutoff date with respect to Ms. Delavecchia, we didn't say anything about knowledge. And so the language in those key paragraphs, and this is, again, on page 1255, is what guides not only the lower courts but the Florida Supreme Court itself. Now, I do want to talk about footnote two. And I think an over-reliance on that footnote is wrong for two independent reasons, one of which the district court identified and one which it did not. The one that the district court identified, of course, was that it just doesn't read like the basis of a decision. It's in a footnote. It's sort of a throwaway. It starts with the words, we also note. Your honors know more about appellate writing than I do, of course, but that's not, generally speaking, how appellate courts articulate the basis for their decisions. And Chacon really backs up the district court on that point, because, again, Chacon relies on the Delavecchia determination to reach its own holding. And it would be a very strange thing to do if, in fact, it was this waiver determination as hinted at in footnote two. But there's a second, more fundamental point that I think must be recognized. That footnote is not referring to what you necessarily think it is. The defendants absolutely contested Ms. Delavecchia's judgment on this exact basis, that her disease appeared too late. The intermediate court did not invent this out of whole cloth. It was in their briefing there. It was also in their briefing before the Florida Supreme Court. So what was the court referring to in that footnote? It was a question of timing. The plaintiffs in Engle, in the Engle Supreme Court, argued that defendants had not objected to the inclusion of the class representatives until after the verdicts came in. Because, of course, before the verdicts came in, the defendants had every incentive in the class being as broad as possible. And so, again, according to the plaintiffs, the defendants seeking to bind as many as possible to a defense verdict never argued there was a cutoff date at all. And so we're stopped from making any such arguments against the class representatives specifically. Now, you don't need to decide who's right. The Engle trial record is long, and it's unnecessary for the court to go into it. But the point is, had the Florida Supreme Court accepted that argument as the basis for its decision, we'd have no cutoff date at all. I think it'd be very strange for the court to impose, again, Chacon's words, impose a cutoff date if there was a viable meritorious argument that tobacco was stopped from asserting a cutoff date. So that footnote says quite a bit by its words, limited, offhand, quote, as we note, unquote, but also as much by its silence, in that it really doesn't grapple with the implications of this argument as it was presented to it. Judge Newsom, in response to your point, Mr. Michael argued precedent, said you don't read the treatment of Angie Delavecchia, but again, that's exactly what the Florida courts do. And that also answers your question, Judge Newsom, about whether Ms. Delavecchia didn't need preclusion in deciding who get to have her judgment upheld. Again, that's just not how the Florida courts look at Engle, how they interpret Engle. On the question of the remedy, Mr. Michael's argument for how the case was presented in the district court is largely unsupported by citation. We would point the court to the McCall case, which actually Mr. Michael relies on. In that case, after holding that a surviving spouse herself was not an Engle class member, Engle tolling the court went on to determine whether or not she nevertheless could proceed on her own statute of limitations, finding on the facts there she couldn't, but certainly not ruling out the possibility of that remedy. I want to talk briefly about what I think is really underlying Mr. Michael's argument, which are these values of notice and opt-out. As I started off with, this is not an opt-out class. It became an opt-in class. And it's sort of a strange argument for Mr. Michael to make because under the class notice, which he cites repeatedly, if you include addiction causation as an element of class membership, then how does anyone make an opt-out choice? It's not something that's reasonably ascertainable. Again, it would never fly in a federal court class certification. I think that our rule actually promotes values of notice and values of ascertainability because it tells you exactly who's in the class and who's out. If you have a qualifying disease and you file by the deadline, you're in. If not, you're out. And I think that's why the Florida Supreme Court in Chacon held that notice and opt-out considerations do not control the resolution of difficult questions about the scope of the Engle cause of action. And then on Mr. Michael's point about the 2012 lung cancer, I think that the court obviously does not need to decide this case based on the record before the court, not what might have been or what was in counsel's minds. I just only point out that our position below was that the cutoff date was not an issue at all because it referred only to manifestation. And we indisputably met the manifestation requirement. There may have been other reasons for not seeking a causation finding as to the 2012 lung cancer. It can be inherently difficult to convince a jury that a disease that was caused by smoking was caused by someone's addiction when the disease first manifested years after that person quit smoking. And so I just wouldn't read too much into that decision either way. To sum up, the decedent in this case was an addicted smoker who had an Engle qualifying disease manifest within the cutoff period set by the Florida Supreme Court who filed a personal injury action by the deadline set by that court and who proved injury and death caused by his addiction to cigarettes. Given those facts... This is Judge Newsom, and I don't mean to interrupt your summary, and I'll give you the time back if you need it, but you just said the plaintiff here had a disease caused by addiction to cigarettes that manifested within the time specified by the Florida Supreme Court. That is November of 1996. Which disease is that? Respectfully, Judge Newsom, don't stumble over my words. That is not what I think I said. What I said was that he had an Engle qualifying disease manifest within the cutoff period. And so in terms of how the Engle class is defined, it's restricted to diseases that the Engle jury found were tobacco-related. So you can't just stroll into court with any disease. It has to be one of those diseases. And then he separately proved injury and death caused by his addiction to cigarettes. So if the question is, is there a single disease that meets every requirement as Mr. Michael stated it, no, there is not. But I don't believe he stated the requirements correctly. No Florida Supreme Court decision says that the manifested disease must also be caused by addiction. Has any court of appeals said that? I don't think so. Let me ask you this, and I'll just confess. I can't find the full citation, but in my notes I've got written down a case called Douglas, which is 110 Southern 3rd, 426. Quote, on or before November 21, 1996, suffered from a disease or medical condition legally caused by addiction to cigarettes? Yes, Judge. Two requirements are fused to me. Yeah. Two responses to that. One, as the district court pointed out, nothing in Douglas purported to consider. Judge Wilson, may I finish answering Judge Usom's question? You may. As the district court pointed out, nothing in Douglas purported to decide the question before the court today. And so I think if we're weighing how Florida Supreme Court decisions bear on this issue, you really have to give Chacon just as close a reading as Douglas. And I think that on balance, the cases favor us. But second, Judge, I think that pulling that language out of Douglas just shows you how it doesn't answer the question. Because elsewhere in Douglas, there's other language suggesting that our position is right. So there's a section of Douglas, and I can try to find the page number, I don't have it written down in front of me, where the Supreme Court, Florida Supreme Court, is listing what you need to prevail in an Engle progeny case. And what the court says is, quote, individual plaintiffs must establish, one, membership in the Engle class. Two, individual causation, i.e., that addiction to smoking the Engle defendant's cigarettes containing nicotine was a legal cause of the injuries alleged. And three, damages. Now, I submit that if you take that quote and just read it, it says that Mr. Harris proved everything he needed to prove, that class membership and any type of individual causation are two separate questions. You asked whether any Florida appellate court had held what Mr. Michael is asking you to determine. The answer is no. Again, I'm well over my time, so with the court's indulgence, I'll briefly expand on that. He cites two cases primarily for that. The Allen case, which says that addiction causation is an element of class membership. You know, that's been taken as a given by the federal courts, because of course it's a Florida Intermediate Appellate Court decision that's never been decided by the Florida Supreme Court. The Florida Supreme Court hears critical decisions in front of them right now. The law is evolving, and so you don't need to decide whether that's right or wrong. The point is it's not something the Florida Supreme Court has ever adopted. And second, he relies on the McCall case, and I would just point out that the McCall case, the language that Mr. Michael block quoted, that appellees block quoted in their brief, I'm sorry, that the appellants block quoted in their brief, has actually been overruled by the Florida Supreme Court in Chacon. It talks about accrual within the class period, so that just shows you the danger of relying on snippets of language from decisions that don't address this issue when you have two fully decided Florida Supreme Court decisions that in our view are really all that you need to read. Apologies for going over my time, and thank you. All right, thank you, Mr. Kaufman. Mr. Michael, you've reserved some time for rebuttal. Thank you, Your Honor. The first point I wanted to make is that the class cutoff date is essentially part of the class definition because the Florida Supreme Court in Engle at 1277 said, the class consists of all Florida residents fitting the class description as of the trial court's order dated November 21st, 1996. So they were setting the perimeter of the Engle class based on both the description and the cutoff date. And they're not creating a new opt-in class. They're saying if you're in the class already, here's how you can continue to pursue your claims. And that was, you know, you file your individual suit within a year, just like a court might say if you're in the class, here's how you submit your claim for reimbursement for the defective tire that the class action was brought over. The Chaconne case, if we do want to look at specifically what they held, the language, the requirements for, this is the Chaconne case at 1140, the requirements for class membership are one, that the plaintiff was a Florida resident, two, that he or she either suffered or was suffering from a smoking-related illness before November 21st, 1996, and three, that his or her addiction caused the disease, not cause some, that disease or some disease that occurred later or any disease. It has to be the disease that was existing at the time of the class cutoff. And just as, I mean, what is the point of a class cutoff date if it does not cut off the class? If you have a class and then something that happens after the cutoff date can bring new people into the class. That's not cutting off the class, which is precisely what the Florida Supreme Court was attempting to prevent from happening by establishing that date. So for all those reasons, we would request that the court reverse and remand for entry of judgment in our favor. Thank you. Thank you, Mr. Michael and Mr. Kaufman. And that completes our docket for this week. And this court is adjourned.